# DRENNAN v. WARBURTON.

No. 1485. Opinion Filed March 12, 1912.

Rehearing Denied September 17, 1912.

(122 Pac. 179.)

1. **APPEAL AND ERROR** — Review — Amendment of Pleading.
Leave to amend pleadings at any stage of the proceeding is
largely in the sound discretion of the trial court, and rulings on
such questions will not be disturbed on appeal, unless it appears
that the court abused its discretion.

2. **PLEADING**—Amendment. It is not error to refuse an amend-
ment which will permit the party requesting the same to intro-
duce evidence tending to establish a usage or custom which con-
travenes a written contract upon which the cause of action is
predicated.

3. **APPEARANCE**—Special Appearance. An appearance, in order
to be special, must be shown to be such by a proper designation
and entitlement.

(Syllabus by the Court.)

*Error from District Court, Alfalfa County;*
*M. C. Garber, Judge.*

Action by D. C. Warburton against R. H. Drennan, doing
business as the R. H. Drennan Grain Company. Judgment for
plaintiff, and defendant brings error. Affirmed.

*Everest, Smith & Campbell,* for plaintiff in error.

*George W. Partridge* and *Talbot & Owen,* for defendant in
error.

KANE, J. This was an action commenced by the defend-
ant in error, plaintiff below, against the plaintiff in error, de-
fendant below, to recover the market value of certain wheat.
Upon trial to a jury there was a verdict for the plaintiff, upon
which judgment was duly entered, to reverse which this pro-
ceeding in error was commenced.

It seems that the petition was filed upon the theory that the
defendant was bound to buy the wheat from the plaintiff at

any time at the option of the plaintiff for the prevailing market price, under the following contract:

"This contract witnesseth, by and between R. H. Drennan Grain Company, party of the first part, and D. C. Warburton, party of the second part: Party of the second part has this day stored with party of the first part one thousand, six hundred and twelve bushels and fifty pounds of wheat testing sixty pounds, for which party of the first part agrees to keep for party of the second part at the rate of one cent per bushel for the first thirty days and one-half of one cent for each succeeding thirty days thereafter until such time as party of the second part desires to dispose of said wheat. Party of the first part hereby agrees to buy said wheat from party of the second part at any time for the prevailing market price at such time, deducting for storage as above stated. Party of the second part has the privilege of selling such wheat to any person he may desire upon the payment to first party of the sum of two cents per bushel for loading such wheat into cars."

The answer of the defendant was to the effect that the defendant was only liable as bailee, and that as the elevator in which the wheat was stored was destroyed by fire through no fault of his, and as the offer to sell the wheat was not made until after the fire, he was absolved from all liability. The reply was a general denial. On the trial the evidence conclusively showed that the elevator was destroyed by fire prior to the time the plaintiff offered his wheat for sale to the defendant and demanded payment therefor. The case, however, was tried upon the theory that, if the evidence showed that all the wheat belonging to the plaintiff was shipped from the elevator and sold by the defendant prior to the fire, the plaintiff was entitled to recover.

The following instruction was given by the court without objection or exception by either party:

"There being no evidence in this case that the fire which destroyed the defendant's elevator was caused by any negligence upon his part, he is not liable to the plaintiff for any of plaintiff's wheat which he has shown by the evidence to have had stored in his elevator at the time of the fire and which was destroyed thereby."

There was evidence tending to show that a large portion, if not all, of the plaintiff's wheat had been sold and shipped by the

defendant prior to the fire, whereupon the defendant asked leave to amend his answer as follows:

"Now, if the court please, at this time, the defendant asks leave to amend its answer in order to conform with the facts, showing the custom of mingling this grain with other grain, and keeping wheat on hand at all times in order to meet storage contracts, sufficient grain of like kind and quality to meet those contracts, and that this defendant at all times did that, complied with that custom and practice, and that, furthermore, it was the prevailing custom for elevator and warehousemen generally and particularly at Ingersoll, Okla., and in that neighborhood, to mingle the grain deposited under contracts, such as the contracts sued upon in this case, with the grain of others and with the grain purchased by the defendant himself, and that it was known and understood by the public generally in their dealings with elevator men and warehousemen that the particular grain which was deposited under those contracts would not be returned to the holder of the contract, but that the custom and practice was for the elevator men or warehousemen to return to them the same quality of grain, same quantity, of like quality and kind."

This request was refused by the court, and that is one of the grounds of error assigned. It is quite apparent that the case by the consent of the parties finally resolved itself into an action for conversion. The foregoing instruction was given without objection, and the request of counsel for leave to amend conclusively points to that conclusion, and upon that theory we will examine the record.

Leave to amend pleadings at any stage of the proceedings is a matter that rests largely in the sound discretion of the court. We would be justified in holding that the record does not show an abuse of discretion in the present case, and decide this assignment upon that ground alone.

But, in addition, the amendment asked, if granted, would permit the defendant to lay a predicate for establishing a custom in direct conflict with the terms of the contract of storage, and this, as is well settled, cannot be done. The contract stipulated that the defendant for a fixed compensation should keep the wheat for the plaintiff until such time as the plaintiff should desire to dispose of it. There is no ambiguity about this language, and it is therefore not subject to construction. If the

contract involved is regarded as a contract of bailment, which it probably is, the defendant became liable for the conversion of the wheat stored immediately upon selling and shipping it out contrary to the terms of the contract, as the jury must have found he did.

Several other assignments of error are predicated upon rulings of the court relative to instructions given by the court and instructions requested by the defendant and refused. As rule 25 of this court (20 Okla. xii, 95 Pac. viii) in relation to setting out instructions objected to and refused has not been complied with, the court will not review any of the instructions given or refused.

The assignment of error based upon the action of the court in overruling defendant's motion to quash the summons cannot be sustained, for the reason that the action of the defendant in the premises constituted a general appearance. The record discloses that the defendant entered what he called a special appearance for the purpose of the motion only, and moved the court to quash the summons, and dismiss the cause, upon the ground that the defendant was a resident of Oklahoma county, and jurisdiction over his person could not be had by service of summons on his agent in the county where the suit was commenced; it appearing that the defendant is an individual doing business under the name and style of R. H. Drennan Grain Company, and not a partnership or corporation. There are some authorities to the effect that a defendant who separately or in conjunction with a motion going only to the jurisdiction of the court over his person invokes the power of the court on the merits, or moves to dismiss, appears generally, but we think there is another and more substantial ground upon which to base our ruling herein. It seems that no exception was taken to the ruling of the court on the original motion to quash, and thereafter the defendant filed a motion to set aside the former order, wherein it is set out that the defendant appears by his attorneys and moves the court to set aside the ruling of the court, etc. This does not pretend to be a special appearance. Practically all the authorities hold that an appearance, in order to be special, must

be shown to be such by a proper designation and entitlement. *Collier v. Falk,* 66 Ala. 223; *Flake v. Carson,* 33 Ill. 518; *Deshler v. Foster,* 1 Morris (Iowa) 403; *Kleinschmidt v. Morse,* 1 Mont. 100; *Baxter v. Arnold,* 9 How. Prac. (N. Y.) 445; *Coatsworth v. Thompson,* 5 N. Y. St. Rep. 809; *Godfrey v. Douglas County,* 28 Ore. 446, 43 Pac. 171; *Lowe. v. Stringham,* 14 Wis. 222; *Pry v. Hannibal, etc., Ry. Co.,* 73 Mo. 127; *Montague v. Marunda,* 71 Neb. 805, 99 N. W. 653.

Finding no reversible error in the record, the judgment of the court below must be affirmed.

TURNER, C. J., and HAYES, WILLIAMS, and DUNN, JJ., concur.